CHRISTINE BRAZIER, Adm'r of the Estate of Dale W. Brazier, Deceased, Plaintiff-Appellee, v. GEORGE J. KONTOS *et al.*, Defendants-Appellants and Third-Party Plaintiffs (Beautiful Signs, Inc., Third-Party Defendant).

Third District No. 3—86—0689

Opinion filed September 4, 1987.

William H. Taube, of Kankakee, for appellants.

Joseph E. Duffy, of Joliet, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Plaintiff, Christine Brazier, administrator of the estate of Dale W. Brazier, deceased, brought an action against landowners-defendants, George and John Kontos (Kontos), alleging a violation of the Structural Work Act (hereinafter referred to as the Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69.) The landowners-defendants filed a third-party complaint for contribution against Beautiful Signs, Inc., the company that was erecting the sign at issue in this case. The jury

returned a verdict in favor of the plaintiff and against defendants, finding George Kontos 10% at fault, John Kontos 10% at fault, and Beautiful Signs 80% at fault. The jury assessed damages against the defendants in the amount of $75,000. Defendants appeal.

On or about December 22, 1983, the Kontos contracted with the third-party defendant, Beautiful Signs, for the erection of a sign to identify the Town & Country Plaza which had been built by Kontos on Jefferson Street in Joliet, Illinois. The plaza was built on land owned by Kontos adjacent to and east of the Town & Country Bowling Lanes, also owned by the Kontos.

The Kontos, acting as general contractors, hired and paid numerous subcontractors, including Beautiful Signs, to do the work. The contract for the sign with Beautiful Signs was separate and distinct from the other contracts relating to the construction of the building. Beautiful Signs provided the necessary material, equipment and tools necessary to erect the sign, and provided the labor and supervision.

The Kontos selected the site where the sign was to be placed and approved the plans submitted by Beautiful Signs to the city of Joliet. John Kontos was present at the site when it was initially located, and George Kontos was at the site on an occasion when Beautiful Signs was working on the sign.

The sign was connected to the shopping center by underground electric wires. The site of the sign was located next to the entrance to the shopping center and some of the tenants were open for business while the sign was being installed. The sign was about 13½ feet from the Commonwealth Edison electrical wires. Timothy Suste, an employee of Beautiful Signs, testified that on one occasion prior to the accident, John Kontos asked the foreman of Beautiful Signs, Terry Taylor, to try not to block the driveway with the truck. Beautiful Signs was using a truck with a hydraulic ladder to erect the sign.

On the day of the accident, Terry Taylor parked the truck with the hydraulic ladder on the west side of the sign location rather than on the east side. Parking the truck on the east side of the sign would have blocked the entrance driveway to the shopping center. Dale Brazier was descending the ladder when he contacted the Edison electrical wire and then fell to his death. The jury answered special interrogatories finding: (1) that the Kontos were in charge of the work; (2) that they violated the Act; and (3) that the violation of the Act was the proximate cause of the death of Dale Brazier.

Defendants raise six issues on appeal: (1) whether the defendants were in charge of the work; (2) whether the defendants were guilty of a willful violation of the Act; (3) whether the plaintiff was engaged in

a structural activity within the meaning of the Act; (4) whether the trial court erred in finding that the sign in question was a structure as a matter of law; (5) whether the jury was improperly instructed; and (6) whether the trial court erred in denying defendants' motions for directed verdict and for judgment notwithstanding the verdict.

Defendants first argue that they were not in charge of the work. Defendants contend that although they had the inherent right to observe and to terminate the work, they only exercised that power once each, and on neither occasion did they interfere with the autonomy enjoyed by Beautiful Signs or its employees in managing the erection of the sign. Defendants contend that all of their actions amounted to nothing more than mere ownership of the premises.

■ In an action brought under the Structural Work Act, a plaintiff must prove the following elements: (1) the plaintiff was engaged in or was passing under or by a structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused the plaintiff's injuries; (6) the defendant had charge of the work being performed; and (7) the defendant willfully violated the Act's safety standard. *Gill v. ParCable, Inc.* (1985), 138 Ill. App. 3d 409, 411, 485 N.E.2d 1215, 1216.

■ ■ Mere ownership, without more, is insufficient to place an owner "in charge" under the Act. (See *Winter v. Davis* (1980), 85 Ill. App. 3d 912, 915, 407 N.E.2d 696, 699.) It is not necessary for a defendant to be in direct charge of the particular operation from which the injury arose, if it is in charge of the overall work for the project under construction. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 498 N.E.2d 522.) As long as there is evidence connecting the owner with the work, a jury question is presented. *Manisco v. Marseilles Fire Protection District* (1985), 132 Ill. App. 3d 390, 477 N.E.2d 534.

■ In *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247, the supreme court rejected the requirement that supervision and control of the work was essential to have charge of the work:

> "Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is "in charge," they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather consistent

with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." 33 Ill. 2d 316, 211 N.E.2d 247, 251.

A review of the testimony adduced at trial reveals that the defendants were not only owners but were also general contractors in control of the entire shopping construction project. Defendants were actively involved in every phase of the construction project. They hired and paid every trade required to construct the shopping center, including an architect, heating and air conditioning contractor, floor covering contractor, electrical contractor, and Beautiful Signs.

■ Defendants selected the dimensions, coloring, language, and location of the sign. Defendants approved plans submitted to the City. Defendants visited the manufacturing plant of Beautiful Signs to check the progress of the sign they ordered. Defendants were present when the footings for the sign were dug. Timothy Suste, who worked for Beautiful Signs on the sign project, testified that he heard John Kontos tell Terry Taylor to try not to block the driveway. Given these facts, we cannot say that the jury's finding that the defendants were "in charge" of the work was against the manifest weight of the evidence. We hold that there was sufficient evidence to find that the defendants were "in charge" under the Act.

■ Defendants next argue that they were not guilty of a willful violation of the Act. Defendants argue that they did not commit a willful violation of the Act because they were not aware that a dangerous condition existed nor could they have discovered the existence of such a condition. Defendants claim that they were not in the sign business and they had no experience in that type of business.

A willful violation of the Act is committed when one having charge of the work knows that a dangerous condition exists on the support device or, by exercise of reasonable care, could have discovered the existence of the condition. (*Cox v. Lumbermen's Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 439 N.E.2d 126.) All those deemed to be in charge of the work have a duty of compliance with the Act. (*Mathieu v. Venture Stores, Inc.* (1986), 144 Ill. App. 3d 783, 494 N.E.2d 806.) The question of willfulness is primarily a factual one for the jury to decide. *Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 418 N.E.2d 822.

■ The record reveals that the defendants-general contractors were on the location where the sign was being erected on at least two occasions. They were on the general construction site where the mall was being constructed every day. In addition, Timothy Suste testified that John Kontos told Terry Taylor of Beautiful Signs not to block the driveway. Given these facts, we believe the defendants, even if they were unaware of the danger, could have discovered the existence of the dangerous condition by exercising reasonable care. We find that there was sufficient evidence to support the jury's finding there was a willful violation of the Act.

■ Defendants next argue that the decedent's injuries were caused by contact with the electrical wires and not by failure of the support device. Defendants claim that placement of the ladder was done by Terry Taylor of Beautiful Signs and that they had nothing to do with the placement of the device. Defendants also claim that even if a request was made to try to not block the driveway, it did not amount to a directive.

The Act is violated where ladders are not erected in a safe manner and where ladders are not placed and operated so as to give proper and adequate protection to life and limb to those employed thereon. (*Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 570, 408 N.E.2d 117.) The record and exhibits in the instant case indicate that the electrical wires were 13½ feet from the sign which plaintiff was erecting. The hydraulic ladder was placed between the sign and the wires at an angle. Clearly, there was sufficient evidence to support a finding that decedent's injuries were proximately caused by improper placement of the skyhook ladder on which he was working.

∎ ■ Defendant's fourth argument is that the sign is not a structure under the Act. Defendants also argue that the truck with the hydraulic ladder is not a structure under the Act, and in any event, was not defective. In *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219, the supreme court stated that a trench which collapsed while plaintiff's decedent was working on it was clearly a "structure" under the Act. The sign at issue in the instant case is 27 feet high and consists of two large metal poles with a sign box attached to the poles. The metal support poles were buried 10 feet in the ground and were embedded in concrete. The sign was connected to the shopping center by underground electric wiring. We agree with the trial court that the sign was an integral and permanent part of the shopping center being constructed and, as such, was a "structure" under the Act.

■ Defendants next argue that plaintiff's instruction No. 11 was erroneously given because it unduly emphasized "structure," thereby

removing a question of fact from the jury. This argument is misplaced because the trial court ruled as a matter of law, and we agree, that the sign was a structure under the Act. Defendants also argue that plaintiff's jury instruction No. 12 was erroneously given because it placed undue emphasis on the word "placement," which was contrary to the language of Illinois Pattern Jury Instructions, Civil, No. 180.14 (2d ed. 1971). A judgment will not be reversed on the basis of faulty instructions unless the complaining party can show prejudice as a result. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 498 N.E.2d 522.) After a review of the record we fail to see any prejudicial error from the alleged improper instruction.

 Defendants' final argument is that a directed verdict should be granted because there is a total lack of evidence to establish liability under the Act. A party is entitled to a directed verdict when all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Due to our disposition of the other issues in this case, we reject defendant's claim that there was insufficient evidence to create a factual question as to the "in charge" and "willful violation" issues, thereby entitling them to a directed verdict.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.