AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Adm'r of the Estate of Raymond Lukas, Sr., Deceased, and as Guardian of the Estate of Raymond John Lukas, Jr., Plaintiff-Appellant, v. NATIONAL ADVERTISING COMPANY, Defendant-Appellee (Commonwealth Edison Company et al., Defendants).

First District (3rd Division)   No. 1—89—1538

Opinion filed October 17, 1990.

RIZZI, J., specially concurring.

Doyle & Ryan, Ltd., of Chicago (John A. Doyle, of counsel), for appellant.

Henry C. Szesny, Victor J. Pierkarski, and Michael Resis, all of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff American National Bank (American) appeals from an order of the circuit court of Cook County granting summary judgment for defendant National Advertising Company (National) on two counts of American's complaint for damages arising from the death of Raymond Lukas, Sr. (Raymond). American brought this action as administrator of Raymond's estate and as guardian of the estate of Raymond's minor child, Raymond Lukas, Jr. The two counts at issue, counts IV and VI, were based, respectively, on alleged violations of the Structural Work Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 et seq.) and on negligence. We reverse and remand.

The pertinent facts are as follows. On February 11, 1983, Raymond and a co-worker, Jeffrey Skoumal, both employees of All Sign Corporation, were assigned to paint a billboard located near Interstate 55 in Will County. That billboard was leased by National, which contracted with All Sign for the painting. The billboard was about 26 feet high. Running along the back of it, two feet down from the top, was a walk rail which consisted of two-by-sixes nailed to the structure. The billboard ran in a north and south direction. At the north end was a high voltage power line, suspended eight inches from the end of the billboard and about 24 to 30 inches above the billboard.

Skoumal was the first to climb to the top of the billboard, placing four hooks at the top to support the aluminum staging they used to support themselves while painting. In his deposition Skoumal testified that he never saw the power line before the accident. In order to place the hooks, he mounted a ladder, which he placed at the north end of the billboard, to a height two feet below the top of the billboard. He then climbed over the top to reach the walk rail. He did not see the power line while on the walk rail because he had to concentrate on his footing, as the boards of the walk rail were old and rotten.

The men proceeded to paint the north section of the billboard. Raymond then climbed up the ladder and onto the walk rail in order to move the hooks farther south along the billboard. Skoumal remained below to finish some painting. The last Skoumal saw of Raymond before the accident was Raymond coming back toward the ladder from the south end of the billboard, along the walk rail. As he continued to paint, Skoumal felt a slight shock and heard a buzz. He looked up and saw Raymond falling. It is apparently undisputed that Raymond's death was caused by his contact with the power line. Wisps of Raymond's hair were found on the line, and burn marks were found on the ladder. Testimony at a coroner's inquest estab-

lished that the electricity entered at Raymond's forehead and exited from his left hand and left leg. Two handmarks, apparently caused by electricity passing through Raymond's hands, were observed at the top of the billboard above the ladder.

Count IV of American's complaint was based on alleged violations of the Structural Work Act by National in, *inter alia*, failing to provide safe scaffolds and supports. The trial court relied on a line of Illinois cases, all decided at the appellate court level, which holds that the danger of electrocution is too far removed from the risks associated with scaffolds and ladders and therefore that injuries resulting from contact with power lines while working on or around such structures could not be the basis for a Structural Work Act suit. (*Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921 (first district, fourth division); *Smyrniotis v. Brockob Construction Co.* (1986), 142 Ill. App. 3d 340, 491 N.E.2d 1246 (first district, first division); *Barrera v. Windy City Exteriors, Inc.* (1989), 182 Ill. App. 3d 936, 538 N.E.2d 773 (first district, fourth division); *Overbeck v. Jon Construction, Inc.* (1989), 184 Ill. App. 3d 918, 540 N.E.2d 969 (first district, second division); *O'Rourke v. Oehler* (1989), 187 Ill. App. 3d 572, 543 N.E.2d 546 (fourth district).) We are not persuaded by these cases. In *Kochan*, the plaintiff was injured while standing on a ladder when he contacted uninsulated high tension lines. The court found that there was no cause of action under the Structural Work Act because the ladder itself was not defective, even though the court also acknowledged that positioning a ladder in an unsafe location could be a violation of the Act. The *Kochan* court was apparently influenced by the plaintiff's admissions that he had been warned about the high tension lines and that he would place the ladder in the same position again were he to receive the same assignment. In *Smyrniotis*, the plaintiff was installing flashing on a roof when he stood up and contacted a power line with his head, receiving severe electrical burns. The court did not dispute that the roof could be construed to be a support or scaffold. But the court held that the hazards of a high-voltage wire were "distinct" from the hazards that are covered by the Act. The *Smyrniotis* court relied heavily on language from *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607, a case in which the plaintiff tripped and fell against a ladder, resulting in a fall through an unbarricaded chamber to a basement. The *Smyrniotis* court quoted the following language from *Tenenbaum*:

> "The obvious hazards of a scaffold or ladder are that workmen or materials may fall off such devices or that the devices themselves may fall. *** The ladder may well have been placed or

left in the baffle area in a negligent manner and may have contributed to plaintiff's injury, but the testimony shows no violation of the Structural Work Act. It is only when an injury has some connection with the hazardous nature of one of the devices named in section 1 of the Act that a cause of action may be maintained under that section of the Act." (*Tenenbaum*, 60 Ill. 2d at 371, 325 N.E.2d at 612-13.)

It was by applying this language that the *Smyrniotis* court held that the hazards of high-voltage wires were distinct from the hazards covered by the Act. Similar logic was used in the later cases we have cited to find no cause of action under the Act where power lines were involved in injuries. (*Barrerra*, aluminum siding held by plaintiff while on scaffolding contacted power lines; *Overbeck*, electrician on ladder injured while installing electrical wiring; *O'Rourke*, painter contacted power lines while working on aluminum ladder.) But all of these decisions are based upon the faulty premise that the Act does not contemplate this type of hazard.

■ It is axiomatic that the Act is to be liberally construed in light of its purpose of protecting persons engaged in extrahazardous activities involving construction, repair, alteration or removal of structures. (*Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 481 N.E.2d 709.) Utilizing this liberal construction, we find it to be evident that the hazards of contact with power lines are contemplated by the Act. By their nature, ladders and scaffolds are utilized to support workers above the ground. High power lines are of course commonly elevated some distance above the ground. It is therefore logical to anticipate that the use of scaffolds and ladders would result in placing workers in close proximity to power lines. Accordingly, we find no basis for holding that accidents involving workers on scaffolds or ladders who contact power lines are not within the contemplated hazards of the Act.

■ We would note in this regard that several Illinois courts have found similar accidents actionable under the Act, although they have not specifically discussed or distinguished *Kochan, Smyrniotis*, and their progeny. In *Brazier v. Kontos* (1987), 160 Ill. App. 3d 177, 513 N.E.2d 152 (third district), the court upheld a verdict under the Act for the estate of a man who contacted electric wire and fell to his death while descending a ladder. And in *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354 (first district, third division), this division affirmed a verdict under the Act for a plaintiff who was injured when a crane under which he was working contacted electrical wires, sending electricity through a steel pipe being lifted by the

crane and guided by the plaintiff. Accordingly, we find that the trial court erred in holding as a matter of law that no cause of action under the Act was possible under the facts of this case.

■ In the trial court National also contended that it was not sufficiently in charge of the work to be liable under the Act. We find that the trial court correctly denied this contention as a basis for summary judgment. There was evidence in the record tending to establish that National was in charge of the work. John Katrenik, a National employee, testified by deposition that he was responsible for fulfilling National's obligation to Santa Fe, the lessor of the property, to maintain the property in a safe condition. He also testified that National had the right to inspect the painting and to stop it if the contractor was not following safety instructions. This testimony, if believed, would suffice to establish that National had the responsibility and opportunity to prevent dangerous work procedures and therefore was in charge of the work for purposes of the Act. *Hausam v. Victor Gruen & Associates* (1980), 86 Ill. App. 3d 1145, 408 N.E.2d 1051.

■ The second dismissed count before us, count VI, was based on common law negligence. National successfully argued in the trial court that summary judgment was appropriate on this count because the danger of the power lines was open and obvious. The court rejected American's claim that Raymond could have been momentarily distracted by the condition of the walk way and therefore that the dangerous condition was not then open and obvious. The recent Illinois Supreme Court case of *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223, directly supports our conclusion that the trial court erred in its finding. In *Ward* the plaintiff had walked into a concrete post located immediately outside the entrance to the defendant's store. The plaintiff admitted that he had seen the post when entering the store, but testified that as he left the store his view of the post was blocked by the large mirror that he had purchased and was carrying out. The appellate court had affirmed the entry of a judgment for defendant, finding that the defendant owed no duty to warn the plaintiff of this open and obvious condition. Our supreme court reversed and reinstated the jury verdict. The court held:

> "[T]o the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants, that rule is not the law in this State." (Emphasis in original.) (136 Ill. 2d at 145, 554 N.E.2d at 229.)

The court adopted the position of the Restatement (Second) of Torts

§343A (1965), which provides that a possessor of land may be liable to invitees for harm arising from known or obvious conditions if the possessor should anticipate the harm despite this knowledge or obviousness. Comment *f* to this section specifies that such reason to anticipate the harm may arise

> "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." (Restatement (Second) of Torts §343A, comment *f*, at 220 (1965).)

In the case before it, the court held that there was ample basis to support a finding that the defendant store should have anticipated the risk that a customer carrying a large, bulky item would collide with the post when leaving the store.

■ In this cause there was evidence before the court that shortly before the accident Raymond's co-worker had himself been so distracted by the necessity of care for his footing on the rotten boards of the walk rail that he did not notice the power line over his head. There was also physical evidence suggesting that Raymond was in the act of transferring from the walk rail to the ladder when he struck the power line with his head. Summary judgment is a drastic measure which is to be granted only where the evidence, even though construed strictly against the movant, still establishes the movant's clear right to that relief. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) Given this evidence before the trial court, we find that it was error to grant summary judgment for National on the negligence count.

National has also requested that we disregard or strike certain speculative portions of two affidavits and an attorney's summary contained in the record. Suffice it to say that our decision has not been based on those portions of the record.

The judgment of the trial court is reversed and the cause remanded with directions that the trial court reinstate counts IV and VI of American's second amended complaint.

Judgment reversed and remanded.

CERDA, P.J., concurs.

JUSTICE RIZZI, specially concurring:
I concur in the result reached by the majority. As to the trial court's summary judgment on count IV of the complaint, however, I

believe the focus should be on (1) whether *the placement* of a ladder may give rise to a cause of action under the Structural Work Act and (2) whether the placement of the ladder in this case may have been a proximate cause of the decedent's death. Since the answer to both questions is in the affirmative, it is plain the trial court erred in entering summary judgment in favor of the defendant on count IV of the complaint.

As to the first question, I believe that the placement of a ladder may give rise to a cause of action under the Act if the placement is a proximate cause of a worker's injury or death. The Act provides:

"All scaffolds, *** ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any *** structure, shall be erected and constructed, in a safe, suitable and proper manner, *and shall be* so erected and constructed, *placed* and operated *as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon*, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 48, par. 60(1).)

The legislative intention of the Act must be ascertained from the language used by the legislature and from the evil to be remedied and the object to be obtained by the Act. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 317, 175 N.E.2d 785, 791.) Plainly, the language used by the legislature mandates that all ladders *shall be placed* as to give proper and adequate protection to the life and limb of any person engaged thereon. The evil to be remedied and the object to be obtained by the Act is to prevent injuries to persons employed in dangerous and extrahazardous occupations so that negligence on their part in the manner of doing their work might not prove fatal. (*Smith v. Georgia Pacific Corp.* (1980), 86 Ill. App. 3d 570, 573, 408 N.E.2d 117, 119.) Surely, the placement of a ladder can cause persons employed in dangerous and extrahazardous occupations to be injured or killed, especially if they are negligent in the manner of doing their work. It follows that the legislative intention is that the placement of a ladder may give rise to a cause of action under the Act if the placement is a proximate cause of a worker's injury or death. The fact that an electric power line was involved in the occurrence makes no difference. The key question in each case is whether the placement of the ladder was a proximate cause of the worker's injury or death.

The remaining question here, therefore, is whether the placement of the ladder may have been a proximate cause of the decedent's death. Usually, whether a certain act was a proximate cause of a decedent's death is a factual question to be determined by all attending facts or circumstances. It is fundamental, however, that there may be more than one proximate cause. Liability will attach under the Act if a defendant's violation contributed in whole or in part to the death so long as it was one of the proximate causes. *Ewert v. Wieboldt Stores, Inc.* (1980), 84 Ill. App. 3d 1008, 1014, 405 N.E.2d 1283, 1287.

Bearing the above-stated principles in mind, I believe that in this case although the decedent may have been negligent and a proximate cause of his own electrocution, the placement of the ladder may also have been a proximate cause of contact being made between the decedent and the energized electric power line or electrical current arcing to the decedent. The ladder may have been negligently placed too close to the energized power line to allow the decedent to safely do his work while engaged on the ladder, or the ladder may have been placed too close to the energized power line so as not to give proper and adequate protection to the decedent if he was negligent in the manner in which he was doing his work while engaged thereon. Thus, to me, the placement of the ladder may give rise to a cause of action under the Act albeit an electric power line was involved in the occurrence.

Also, in reaching my conclusion, I reject any contention that the Act should be interpreted to mean that the only basis for imposing liability with respect to the placement of a ladder is that the ladder was not secure or not properly supported. (Compare *Carrillo v. Pepper Construction Co.* (1990), 201 Ill. App. 3d 647, and *Overbeck v. Jon Construction, Inc.* (1989), 184 Ill. App. 3d 918, 923-25, 540 N.E.2d 969.) Such a contention is contrary and does violence to the legislative intention of the Act, and is contrary and does violence to long-established principles of proximate cause.

Under the circumstances, I believe that there is a factual issue in this case as to whether the cause of action alleged in count IV of the complaint may be maintained. The factual issue is whether the placement of the ladder was a proximate cause of the decedent's death.

Accordingly, although I concur in the result reached by the majority, I would reverse the summary judgment on count IV of the complaint for the reasons that I have stated.