JIMMY JACKSON, Plaintiff-Appellant, v. BACK OF THE YARDS NEIGH-BORHOOD COUNCIL et al., Defendants-Appellees.

First District (3rd Division)   No. 1—90—1744

Opinion filed December 9, 1992.

Harold A. Katz, David E. Rapoport, and David J. Kupets, all of Chicago, for appellant.

Michael Resis, of Querrey & Harrow, Ltd., of Chicago, for appellee All-star Amusement Company.

John M. Barnes, of Chicago, for appellee Astro Amusement Company.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Jimmy Jackson, filed an action under the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*), to recover damages from defendants, Back of the Yards Neighborhood Council (Council), Astro Amusement Company (Astro) and Allstar Amusement Company, Inc. (Allstar), for personal injuries sustained in a fall. Allstar and Astro filed motions for summary judgment which were granted. Plaintiff appeals. We reverse.

The issues before this court are: (1) whether the trial court erred when it ruled that plaintiff's claim under the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) was barred by employers' immunity under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, pars. 138.5(a), 138.11); (2) whether the trial court erred in granting summary judgment on the basis that there was a genuine issue of material fact as to whether defendants were "in charge" of plaintiff's work; and (3) in the event the trial court's grant of summary judgment is reversed, whether defendant Allstar is entitled to summary judgment on count I on the basis that the roller coaster from which plaintiff fell was not an "other structure" within the meaning of the Structural Work Act. Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*

On March 27, 1984, the Council entered into an agreement with Carol Stream Amusements, Allstar and Astro, a group of amusement ride operators, for the purpose of producing the Back of the Yards Fair. Carol Stream Amusements, Allstar and Astro were referred to as "the company" in the agreement. Under the agreement, the company was required to furnish a sufficient number of rides, games, security, and sanitation; to obtain public liability insurance; and to pay a flat fee to the Council. In return for these services, the company was to receive the exclusive right to parking fees, gate charges, beer sales, tent rentals and the proceeds from other fair-related business activities; all money paid for admissions to rides and to concessions; and the right of first refusal for a period of five years to continue to provide these services annually. The agreement was signed by a representative of the Council, and the presidents of Carol Stream Amusements, Allstar and Astro.

In furtherance of the above agreement, the Council and the company formed Spectacular Midways, Inc., and entered into an equipment lease agreement. The presidents of Allstar, Astro and Carol Stream Amusements served as the officers of Spectacular Midways, Inc. The equipment lease agreement makes the following relevant provisions:

"WHEREAS, the PARTIES hereto as LESSOR and LESSEE respectively desire to enter into an agreement for the purpose of leasing carnival equipment and/or personnel, to be used by the LESSOR in furtherance of its contract with the Back of the Yards Council.

THEN, THEREFORE, in consideration of the premises and of the sum of One ($1.00) Dollar and other good and valuable consideration the sufficiency of which is deemed adequate, the PARTIES agree as follows:

1. EQUIPMENT LEASED: Attached to this Agreement is a schedule known as Schedule 'A' which sets forth on it the equipment which originally forms the terms of this Lease. The LESSEES of said equipment may from time to time append or alter the schedules as may be agreed between the individual LESSEE and the LESSOR. In addition thereto, such personnel as may be needed to operate the equipment from time to time may be leased or loaned under the terms of this Agreement.

\* \* \*

5. INDEMNIFICATION AND HOLD HARMLESS: The LESSOR agrees to hold harmless and indemnify the LESSEES from any and all claims, causes of action, demands or suits that may arise out of the LESSOR'S operation of the equipment leased and supervision of the personnel loaned. This indemnity extends to all actions in contract, tort and any other cause of action brought by any party in that regard. The LESSOR agrees that there shall be in force at all times appropriate amounts of insurance. This indemnification shall extend to attorneys' fees, court costs and other costs in connection with the defense of any case."

The equipment lease agreement was signed by the same persons who signed the first agreement.

Under the terms of both agreements, Shirl T. Magid, president of Carol Stream Amusements, Jeffrey Blomsness, president of Allstar, and Steven Thebault, president of Astro, were to oversee the entire fair.

On August 14, 1984, Jimmy Jackson, an employee of Carol Stream Amusements, was seriously injured when he fell from the "Zyclon 36" roller coaster which he was erecting. Jackson was pushed off the structure when a section of the roller coaster being raised by a crane struck another worker who in turn struck Jackson. Jackson fell approximately 25 feet to the ground. There were no safety belts or harnesses on the work site.

Jackson subsequently brought an action to recover damages for personal injuries sustained in the fall. Count I of Jackson's second amended complaint alleged that the Council, Allstar and Astro committed willful violations of the Structural Work Act by failing to provide a scaffold upon which he could work, failing to direct and supervise the work, failing to provide safe working conditions and failing to provide protective equipment. (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) Count II was substantially similar to count I; however, count II was based on common law negligence.

Allstar and Astro filed answers denying all material allegations of wrongdoing. Allstar and Astro thereafter filed third-party complaints seeking contribution from Carol Stream Amusements. Carol Stream Amusements filed answers denying all material allegations.

Allstar and Astro then moved for summary judgment. Allstar and Astro argued that they were entitled to summary judgment because they were not "in charge" of the work performed by Jackson within the meaning of the Structural Work Act, and because they owed no duty to Jackson since he was an employee of Carol Stream Amusements.

The trial court found that a joint venture existed between Carol Stream Amusements, Allstar and Astro. The court then held that Jackson was an employee of the joint venture as a matter of law. The trial court also raised employers' immunity under the Workers' Compensation Act, *sua sponte*, stating that all claims against Allstar, Astro and Carol Stream Amusements were barred by the Structural Work Act. (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*; Ill. Rev. Stat. 1983, ch. 48, pars. 138.5(a), 138.11.) The court then granted Allstar and Astro's motion for summary judgment. This appeal followed. Plaintiff and Allstar filed briefs before this court.

Plaintiff contends that the trial court erred when it invoked the employer's immunity doctrine under the Workers' Compensation Act on behalf of defendants and ruled that each member of the joint venture was entitled to employers' immunity as a matter of law. (Ill. Rev. Stat. 1983, ch. 48, pars. 138.5 (a), 138.11.) We agree.

■■ ■ Although the Workers' Compensation Act provides that employers have an immunity defense against any tort action asserted against them by an employee for injuries sustained in the course of employment (Ill. Rev. Stat. 1983, ch. 48, pars. 138.5(a), 138.11; see also *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 322, 175 N.E.2d 785, 794), the immunity is an affirmative defense which the employer must plead and prove. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 10, 461 N.E.2d 382, 386-87; *Hindle v. Dillbeck* (1977), 68 Ill. 2d 309, 317-18, 370 N.E.2d 165, 168.) If the defense is not raised by the employer-party before the trial court, it is waived. (*Doyle*, 101 Ill. 2d at 10, 461 N.E.2d at 386-87; *Meador v. City of Salem* (1972), 51 Ill. 2d 572, 578, 284 N.E.2d 266, 270; *Victor v. Dehmlow* (1950), 405 Ill. 249, 252-53, 90 N.E.2d 724, 726-27.) On the basis of the aforementioned case law, a trial court cannot invoke employers' immunity *sua sponte* on behalf of an employer and then hold that the defense applies to said employer as a matter of law. None of the defendants in the present case pled or raised the affirmative defense of employers' immunity. Accordingly, the trial court erred when it invoked employers' immunity *sua sponte* on behalf of defendants and ruled that the company was immune from suit under the Structural Work Act pursuant to the Worker's Compensation Act as a matter of law. See *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 319-21, 396 N.E.2d 524, 527-28.

Next, plaintiff contends that the trial court erred in granting summary judgment on the basis that there was a genuine issue of material fact as to the question of whether defendants were "in charge" of his work. We agree.

■■ ■ The trial court's grant of summary judgment conflicts with the standards established by the Illinois Supreme Court and this court for determining when a defendant was "in charge" of a plaintiff's work. The Illinois Supreme Court has treated the issue of whether a defendant was "in charge" of an injured plaintiff's work as a question of fact, not a question of law. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 123-24, 373 N.E.2d 1348, 1353; *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151-52, 317 N.E.2d 573, 576.) In addition, this court has found in cases similar to the present case that injured workers have a cause of action under the Act. (*American National Bank & Trust Co. v. National Advertising Co.* (1990), 205 Ill. App. 3d 348, 352-54, 562 N.E.2d 1057, 1060-61; *Brazier v. Kontos* (1987), 160 Ill. App. 3d 177, 181-82, 513 N.E.2d 152, 155-56; *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 515-16, 373 N.E.2d 1354, 1371.) We have found

that "[i]t is axiomatic that the [Structural Work Act] is to be liberally construed in light of its purpose of protecting persons engaged in extrahazardous activities involving construction, repair, alteration or removal of structures." (*American National Bank & Trust Co.*, 205 Ill. App. 3d at 352, 562 N.E.2d at 1059-60.) On the basis of the above case law, we find that accidents involving workers who are knocked to the ground by the force of a crane while erecting elevated structures are within the contemplated hazards of the Act.

The question of whether defendants were "in charge" of plaintiff's work in the present case is a disputed issue of material fact. Plaintiff maintains that defendants were "in charge" of his work since the president of Carol Stream Amusements admitted that defendants were responsible for overseeing the entire fair, and because the agreements implicitly required that each defendant share responsibility for controlling the ongoing work. Plaintiff, however, testified that he worked for Carol Stream Amusements.

Defendant Allstar argues that the trial court properly granted summary judgment because it was not "in charge" of plaintiff's work since it neither had the right to control the operations of Carol Stream Amusements or defendant Astro, nor did it exercise control or supervision over said parties. Defendant Allstar also maintains that it did not have the right to control plaintiff because each company was solely responsible for its own employees, equipment and amusement rides. Defendant Allstar also maintains that it was not "in charge" of plaintiff's work at the time of the accident because defendants acted as independent contractors in supplying the equipment, because each defendant retained individual responsibility for its own rides, its own employees, its own expenses, its own payroll and its own building permits and because none of the agreements gave any of the defendants a right to control any other defendant. Finally, defendant Allstar argues that it was not in charge of plaintiff's work because it did not own the roller coaster from which he fell, or the crane or truck being used at the time of the accident.

■ The following factors are taken into consideration in determining whether a party is "in charge" of a complainant's work: supervision and control of the work; retention of the right to supervise and control the work; constant participation in ongoing activities at the construction site; supervision and coordination of subcontractors; responsibility for taking safety precautions at the jobsite; authority to issue change orders; and the right to stop work. (*Cutuk v. Hayes/Gallardo, Inc.* (1991), 223 Ill. App. 3d 1097, 1100-01, 586 N.E.2d 357, 359; *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11, 445

N.E.2d 39, 42.) Other factors include ownership of the equipment used on the jobsite, defendant's familiarity with construction customs and practices and whether defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. *Cutuk*, 223 Ill. App. 3d at 1100-01, 586 N.E.2d at 359; *Chance*, 112 Ill. App. 3d at 11, 445 N.E.2d at 42.

■ Summary judgment is a drastic measure which may be granted only where the evidence, which must be strictly construed against the movant, establishes the movant's clear right to relief. (*American National Bank & Trust Co. v. National Advertising Co.* (1990), 205 Ill. App. 3d 348, 354, 562 N.E.2d 1057, 1061.) Defendants have not established a clear legal right to summary judgment. We therefore find that the trial court erred when it found that as a matter of law defendants were not "in charge" of the work performed by plaintiff within the meaning of the Structural Work Act at the time he was injured.

■ Finally, defendant Allstar argues that it is entitled to summary judgment on count I on the basis that the roller coaster from which plaintiff fell was not an "other structure" within the meaning of the Structural Work Act (Act). The Act provides:

> "§1. That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, *or other structure,* shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, *** and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 48, par. 60.)

The Act was enacted in order to protect workers engaged in work-related activities of a hazardous nature on or near a construction site. *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573, 576; *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421-22, 512 N.E.2d 1223, 1224.

Illinois courts have addressed the question of whether a particular object from which a plaintiff-employee fell constituted an "other structure" within the meaning of the Act on several occasions. In *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 138-39, 290 N.E.2d 219, 220, the Illinois Supreme Court held that the plaintiff's deceased relative

was killed while working upon a sewer system which constituted an other structure within the meaning of the Act, either by itself or on the basis that it was an integral part of the buildings being erected on the construction site. Later, in *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436-37, 328 N.E.2d 318, 320, the Illinois Supreme Court ruled that a power shovel used for strip mining coal was not a structure within the meaning of the Act. In *Brazier v. Kontos* (1987), 160 Ill. App. 3d 177, 183, 513 N.E.2d 152, 156, we ruled that a shopping center sign was a structure within the meaning of the Act. This court has ruled that drilling rigs and oil wells, however, are not structures within the meaning of the Act. (*Heil v. Superior Oil Co.* (1989), 182 Ill. App. 3d 238, 242, 537 N.E.2d 1045, 1048; *Bullistron v. Northern Builders, Inc.* (1984), 127 Ill. App. 3d 242, 245-46, 468 N.E.2d 1281, 1283-84; *Bishop v. Mitchell Group, Inc.* (1987), 163 Ill. App. 3d 275, 278-79, 516 N.E.2d 969, 971.) Furthermore, this court has found that decorative lights strung between utility poles, and television cables and poles do not constitute other structures within the meaning of the Act. (*Long v. City of New Boston* (1982), 91 Ill. 2d 456, 466-67, 440 N.E.2d 625, 630; *Burks v. Matrix Vision of Wilmette, Inc.* (1988), 174 Ill. App. 3d 1086, 1089, 529 N.E.2d 642, 644.) In addition, we have ruled that an air compressor system located on an elevated concrete platform in an automotive service department was a structure within the meaning of the Act. (*Innis v. Elmhurst Dodge, Inc.* (1984), 126 Ill. App. 3d 690, 692-93, 467 N.E.2d 1002, 1003-04.) The question of whether a particular object constitutes an "other structure" within the meaning of the Act should be determined by a trier of fact on a case-by-case basis. Accordingly, the question of whether the roller coaster in the present case was an "other structure" within the meaning of the Act is an issue of material fact which cannot be determined as a matter of law. This issue should therefore be resolved by the trial court upon remand.

For the aforementioned reasons, we reverse the trial court's grant of summary judgment and remand this cause for further proceedings in the trial court.

Reversed and remanded.

GREIMAN, P.J., and CERDA, J., concur.