PEGGY A. WHITMAN *et al.*, Plaintiffs-Appellants, v. THOMAS S. LO-PATKIEWICZ, Defendant-Appellee.

Second District No. 2—86—0559

Opinion filed February 12, 1987.

Charles William Dobra, Ltd., of Bloomingdale, for appellants.

Bonnie M. Wheaton, of Wylie Wheaton & Associates, P.C., of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Peggy A. Whitman and Steven Whitman, filed a complaint against the defendant, Thomas S. Lopatkiewicz, alleging personal injuries resulting from a two-car accident. Defendant's motion for summary judgment was granted, and the plaintiffs appeal. We affirm.

All parties answered interrogatories and gave depositions. Depositions were also taken of Thomas D. Knowles and Charles Gruber. All

testimony referred to is from these depositions.

Plaintiff, Peggy A. Whitman, testified that the accident happened at approximately 1 p.m. She testified that the weather conditions were rainy, foggy, and misty. Plaintiffs' car had its headlights and windshield wipers on and was in good mechanical condition. Peggy's husband, Steven, and their infant son were passengers in the automobile. Steven was in the front passenger seat. No one other than Peggy, Steven, their infant son, and the defendant witnessed the accident. The accident occurred at the intersection of Army Trail Road and Old Gary Avenue in the village of Bloomingdale. Old Gary Avenue is a two-lane highway going north and south. Plaintiff was travelling south on Old Gary Avenue. There was a stop sign for the plaintiff. She came to a complete stop at the stop sign and had her left turn signal on. She did not see the vehicle being driven by defendant. She waited at the stop sign for more than 10 seconds for other traffic to clear. She then proceeded through the intersection, and, as the front of her car was at the median, the impact occurred. She did not see defendant's car at any time prior to the impact.

At the point of the accident, Army Trail Road is a four-lane highway with a raised median strip in the middle. Peggy testified that the speed limit on Army Trail Road was 45 miles per hour. She did not hear any squeal of brakes or honking of horns prior to the impact. Nothing obstructed her view of Army Trail Road. She had no idea at what speed the defendant was travelling. The first indication she had that there would be an impact was when she actually felt it.

Plaintiff Steven Whitman testified that he was looking west immediately prior to the impact. He did not look towards the east as the car was stopped at the intersection. He saw the defendant's vehicle a split second before the impact. He has no estimate of how fast his car was travelling at the point of impact or any estimate of the speed of defendant's car. He did not hear any sounds of brakes or horn prior to the impact, nor did he observe Peggy putting on the brakes.

Defendant testified that he was returning home after an Easter Sunday visit with his mother. He was travelling westbound on Army Trail Road at about 40 miles per hour, in the center westbound lane. He testified that the speed limit was 45 or 40 miles per hour. There was a light rain, but the lighting conditions were clear and sunny. There was nothing in front of him or to the side which would restrict his vision in that area. He was uncertain as to whether he had his headlights on. He did not know if the plaintiff stopped. He stepped on the brakes and slid into the plaintiffs' vehicle. He was going straight, the plaintiff pulled out, and the cars hit.

Sargeant Thomas D. Knowles of the Bloomingdale police department testified at his deposition that he investigated the occurrence. He had no specialized training regarding the investigation of traffic accidents. He did not have a good recollection of the investigation of this automobile collision. Officer Knowles recalled skid marks, but did not know how long they were. However, subsequent to refreshing his memory with his police report and photographs, Sergeant Knowles recalled that it had been raining and that defendant told him that the Whitman vehicle turned in front of him, that debris from the collision existed in the intersection, seemingly in the southerly westbound lane of Army Trail Road, and that skid marks of an undetermined length existed. Sergeant Knowles could not recall whether any construction was ongoing in the area or where the skid marks started in relationship to buildings existing at the scene.

Charles Gruber is a police officer and is the brother-in-law of plaintiff Peggy A. Whitman. He was the first person at the scene after the accident. He observed debris from the accident and skid marks. He could not give an estimate of the length of the skid marks. He did not look at the tires on either of the vehicles. The weather was foggy, overcast, misty, and bad.

Charles Gruber testified that he was the chief of police for more than 10 years for the city of Quincy, and that prior to that he had served as a lieutenant, sergeant, and patrolman. As a patrolman he investigated automobile accidents and was trained in the investigation of automobile accidents at the University of Illinois. He also had in-service training at the Addison police department in traffic accident reconstruction. Along with other duties, Gruber investigated auto accidents for five or six years. While a sergeant and officer at the Addison police department, Gruber supervised the investigation of traffic accidents on a daily basis and still reviews and investigates traffic accidents.

Gruber observed that there was ongoing road construction in the area and that "[i]t was clear from the debris that the accident took place in the southern lane of westbound Army Trail Road." Gruber observed broken glass, radiator fluids, a piece of bumper, and other debris. In addition, Gruber observed skid marks. Although Gruber did not have a tape measure at the time, and was more concerned about rendering assistance to the collision victims, he "took a pretty good look at the scene" and described the skid marks from defendant's vehicle as "considerable." He estimated that they were "four to five car lengths" in length. These skid marks were straight and were in the southern lane of traffic. Gruber testified that he was "positive" that

the skid marks which he observed on the pavement were from the defendant's vehicle.

Copies of the depositions were reviewed by the court, and the court ruled that the deposition testimony of Charles Gruber was that of a post-occurrence witness. The court ruled that "the evidence contained in the deposition does not sufficiently set forth the possibility or probability that there was negligence on the part of the Defendant or proximate cause arising out of any negligence that the Defendant had. The Motion for Summary Judgment will be granted."

Plaintiffs first contend that there are issues of material fact which prevent this cause from being disposed of in a grant of summary judgment. They argue that pursuant to *Alvis v. Ribar* (1981), 85 Ill. 2d 1, since there was an accident, they are entitled to have a jury determine the percentage of negligence. Plaintiffs argue at great length to raise questions relating to the position of the plaintiffs' car at impact with the defendant's car. They argue that whether the plaintiffs' car was on the median or in the right lane presents a genuine issue of material fact. We disagree.

The uncontroverted testimony indicates that the defendant was driving his vehicle at about 40 miles per hour, which was at or below the speed limit on the preferential roadway. The extensive deposition testimony of parties and post-occurrence witnesses clearly shows that there is no evidence upon which a jury could predicate a finding of defendant's liability. Plaintiffs' allegations of negligence are grounded solely on their speculation that defendant must have done something wrong for the accident to have occurred.

■ Plaintiffs must come forward with evidence of negligence on the part of the defendant and with evidence that defendant's negligence was a proximate cause of the plaintiffs' injuries. As the court stated in *Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 101, "In order to prevent the entry of a summary judgment, the nonmoving party must present a *bona fide* factual defense and not hide behind equivocations and general denials." The deposition testimony does not show evidence of any negligence on the part of the defendant or that any alleged negligence was the proximate cause of the plaintiffs' injuries.

Plaintiffs call the court's attention to *Hasty v. Kilpatrick* (1985), 130 Ill. App. 3d 859. In *Hasty*, the plaintiff testified that she stopped at the intersection, looked in both directions but did not see defendant's automobile until the collision. Defendant testified that she turned onto Adams only one short block west of Liberty and was proceeding at about 20 miles per hour when the collision occurred. She

did not see plaintiff's vehicle until it was in the intersection. The jury returned verdicts in favor of defendant. The court stated, "The inference to be drawn from the evidence is that plaintiff Hasty grossly misjudged the approach of defendant's car, or, alternately, entirely failed to see it." (130 Ill. App. 3d 859, 863.) The court held that a motorist on a preferential road does not possess an absolute right under all circumstances, but he does have the right to expect that vehicles on the nonpreferential road will obey the stop sign and yield the right-of-way. (130 Ill. App. 3d 859, 863.) The decision was affirmed.

■■ Summary judgment is appropriate only when the pleadings, depositions, admissions on file, and affidavits present no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) It is fundamental, however, that there can be no recovery in tort for negligence unless the defendant breached a duty owed to the plaintiff. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162-63.

■■■ The supreme court has set forth the following principles:

"A motion for summary judgment should be granted where there is no genuine issue as to any material fact. The court is to determine the existence or absence of a genuine issue as to any material fact from the affidavits, depositions, admissions, exhibits and pleadings in the case. [Citations.] The facts to be considered by the court are evidentiary facts. [Citation.] Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate. [Citation.] If the party moving for summary judgment supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact. [Citations.]" (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.

See also *Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 575.) The issue of fact must also be material; issues that do not matter to the result are immaterial and do not preclude summary judgment, but one dispositive issue may make all others immaterial. The supreme court has summarized by stating that if what is submitted to support and oppose the motion "would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be en-

tered." *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587.

■ No presumption of negligence arises from the mere happening of an accident. (*Rotche v. Buick Motor Co.* (1934), 358 Ill. 507, 516.) Negligence is not presumed but must be proved as a fact by the party alleging it. *McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 51.

■ The jury must base its decision on evidence and not on guess or speculation. (*Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 101.) Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury. (*Hagerman v. National Food Stores, Inc.* (1972), 5 Ill. App. 3d 439, 443.) The evidence shows that defendant was driving within the speed limit on a preferential road. The plaintiffs, driver and passenger, both failed to see defendant, and plaintiff driver drove their car in front of defendant's line of travel. Based on the evidence presented to the trial court, the court would have been required to direct a verdict. Therefore, summary judgment was properly entered.

■ The second issue raised by plaintiffs questions the ruling by the trial court that Charles Gruber, the first person on the scene of the occurrence immediately subsequent to the collision, was a post-occurrence witness. Plaintiffs contend that Gruber would easily qualify to testify as an accident reconstruction witness. Plaintiffs contend that Gruber should be called to testify as to defendant's speed immediately prior to the impact. Plaintiffs state "although Gruber did not express an opinion to the precise or approximate speed of Defendant's vehicle, there seems to be no doubt that he could at trial." Extensive time was devoted in plaintiffs' brief to the qualifications of an expert witness.

Before we reach the question of qualifications, we should first determine whether use of a reconstruction expert is appropriate in this case. Even if Mr. Gruber were duly qualified as an expert reconstruction witness, his sole function would be to impeach the credible testimony of the defendant. It is well settled that reconstruction testimony is inadmissible to impeach otherwise credible eyewitness testimony. As the court stated in *Milton v. Britton* (1974), 19 Ill. App. 3d 922, 929-30:

> "In Illinois, accident reconstruction testimony may not be used as a substitute for eyewitness testimony when the latter is available, nor may it be used in addition to eyewitness testimony unless it is necessary to rely upon knowledge and the application of principles of science beyond the ken of the average

juror. [Citations.] ***

The defendant's additional argument that the expert testimony was admissible to contradict the prior testimony as to the vehicle's speed and path of travel is an attempt to justify this testimony, not as an aid to the determination of a fact question beyond the scientific ken of the jury, but as a challenge to the accuracy of previous testimony. Accident reconstruction testimony is not admissible for the purpose of impeaching credible eyewitness testimony."

In the case at bar, the defendant's deposition testimony that he was travelling at 40 miles per hour is similar to the testimony in *National Bank v. Pickens* (1972), 8 Ill. App. 3d 58, 61, where the court stated:

"Here, nothing suggests that the eyewitness testimony was incredible, unbelievable or contrary to accepted natural or physical laws, and no issue presented requires an expert's explanation of natural or physical facts which are beyond the ken of the ordinary juror."

■ The only testimony regarding the defendant's speed is that of the defendant himself. There is no conflict between two eyewitnesses as to the defendant's speed. Therefore, even a qualified accident reconstruction expert would be inappropriate in this cause.

Summary judgment is an important tool in the administration of justice. Its use in a proper case is to be encouraged, and its benefits inure not only to the litigants, in the saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586.) Based on the foregoing, we conclude that summary judgment was properly entered in favor of the defendant, and the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and NASH, J., concur.