202 Ill. App.3d 659 (1990)
559 N.E.2d 1125
In re ESTATE OF RUSSELL A. MARTIN, Deceased (Veronica Deanne Martin, Ex'r, Plaintiff-Appellant,
v.
Menard Electric Cooperative, Defendant and Third-Party Plaintiff-Appellee (John Chalmers, Third-Party Defendant-Appellee)).
No. 4-90-0107.
Illinois Appellate Court  Fourth District.
Opinion filed August 30, 1990.
*660 William H. Knuppel, of Boggs & Knuppel, P.C., of Havana, for appellant.
Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Gary L. Borah and Francis J. Lynch, both of Springfield, for appellee John Chalmers.
Matthew J. Maddox and George B. Gillespie, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellee Menard Electric Cooperative.
Reversed and remanded.
JUSTICE LUND delivered the opinion of the court:
Russell A. Martin (decedent) was killed as a result of making contact with Menard Electric Cooperative (Menard) transmission lines. The accident happened while the decedent was on top of and cleaning a feed bin located on farm property owned by John Chalmers. Decedent was using a 20-foot aluminum pole, which came in contact with uninsulated wires carrying 7,200 volts of electricity. The wires were approximately 13 feet above the bin. Plaintiff Veronica Deanne Martin, executor of decedent's estate, brought the present wrongful death action, and Chalmers was made a third-party defendant by Menard. Following a motion for summary judgment filed by Menard, the trial court, citing the third district decision in Icenogle v. Myers (1988), 167 Ill. App.3d 239, 521 N.E.2d 163, entered judgment in favor of Menard. Plaintiff now appeals.
 1, 2 Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact and that the movant is *661 entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2-1005(c); Bank of Pawnee v. Joslin (1988), 166 Ill. App.3d 927, 930, 521 N.E.2d 1177, 1179.) However, the determination of whether a legal duty exists is a question of law to be determined by the trial court. (Watkins v. Mt. Carmel Public Utility Co. (1988), 165 Ill. App.3d 493, 496, 519 N.E.2d 10, 12.) The issue on this appeal is whether the facts show a legal duty.
We need not discuss the silent danger of electricity, as the topic has been adequately discussed in prior cases. (See Merlo v. Public Service Co. (1942), 381 Ill. 300, 312-13, 45 N.E.2d 665, 673.) Nor need we dwell on the economic burdens relating to electric transmission lines. See Watkins, 165 Ill. App.3d at 499, 519 N.E.2d at 14.
The plaintiff attempted to allege a duty owing by Menard by using the following allegations:
"6. Prior to the time of the occurrence, although it knew or should have known of the existence and use of said feed bin and the fact that persons climbed upon it by means of an external ladder, the [d]efendant caused a certain distribution line, consisting of uninsulated wires carrying 7200 volts, to be strung and thereafter maintained almost directly over said feed bin and negligently caused or permitted the uninsulated wires to pass and thereafter remain approximately [t]hirteen (13) feet above the top of said feed bin.
7. That prior to and at the time of the occurrence, although it knew or should have known the highly charged uninsulated wire passing directly over said feed bin would injure or kill persons who might come in contact with it through any conductor of electricity and also knew, or should have known, that individuals using said feed bin would climb on top of said bin by means of the external ladder on said feed bin, the [d]efendant was guilty of one or more of the following negligent acts or omissions:
A. It approved the location of said distribution line over said feed bin in spite of the [t]hirty (30) foot wide [e]asement it had been granted by the owner of the property on April 26, 1976.
B. It failed to properly inspect said distribution line after it was completed and to remedy the dangerous condition created by the location of the distribution line in close proximity to the feed bin which was accessible to pedestrians by means of an external ladder."
It is clearly established for purposes of the motion for summary *662 judgment that the decedent climbed to the top of a 17-foot-high feed storage bin for the purposes of scraping crusted feed from the inside of the bin. The method of cleaning required the use of a long-handled paddle or scraper which was inserted through the top of the bin. The handle or pole used was made of aluminum and was 20 feet in length. The Menard transmission lines were constructed approximately 13 feet over the bin and installed after the bins were constructed. The 20-foot pole came into contact with wires, or electricity arced.
Summary judgment in the present case was entered in Menard's favor based upon the decision in Icenogle, which was in turn principally based upon the supreme court decision in Genaust v. Illinois Power Co. (1976), 62 Ill.2d 456, 343 N.E.2d 465. The facts in Icenogle were, to an extent, similar to the present case. The injured party was on top of a grain bin with a long-handled paint sprayer which made contact with transmission lines, which were 12 feet (at the nearest point) from the crown of the bin. However, the bin was a grain bin, not a feed bin. The power lines were on a public right-of-way, not over the bin, and the spray-paint equipment was not necessary to regularly clean the inside of the bin. While the grain bin had perpendicular sides and, when empty, access to the inside was available at the ground level, the bin in the present case was cone-shaped on both the top and bottom, and access to the interior was necessarily from the top.
Genaust involved the alleged duty to warn, and the opinion stated that the danger of electricity is common knowledge to those with ordinary intelligence and experience. Accordingly, there is no duty to warn. Forseeability is a question necessarily present in determining the existence of a duty, and it is not objectively reasonable to expect an ordinarily intelligent and experienced adult to bring a conductor of electricity close to the electric lines. See Genaust, 62 Ill.2d at 466, 343 N.E.2d at 471; Carroll v. Commonwealth Edison Co. (1986), 147 Ill. App.3d 909, 912-13, 498 N.E.2d 645, 647.
It would appear that Genaust established a rule freeing electric power suppliers from liability when an ordinarily intelligent and experienced person brings a conductor in contact with any visible electric power lines. However, Merlo and cases citing Merlo (see Schmall v. Village of Addison (1988), 171 Ill. App.3d 344, 349-50, 525 N.E.2d 258, 262; German v. Illinois Power Co. (1983), 115 Ill. App.3d 977, 982, 451 N.E.2d 903, 906) have followed the rule that:
"[A]n electric company using highly charged wires owes the legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be, whether for business, pleasure or convenience, is liable to come in contact *663 with the wires to see that such wires are properly placed with reference to the safety of such persons and are properly insulated. (18 Am. Jur. p. 485.) This is nothing more than the ordinary care required under the circumstances when put into practice. The reason for requiring insulation and vigilance in maintaining the wires in proper condition is the deadly and dangerous power of the current carried along such wires." (Merlo, 381 Ill. at 314-15, 45 N.E.2d at 674.)
In Merlo, the power lines were on a public street adjoining a sewer project when a drag-line cable came into contact with the uninsulated or partially insulated lines. In Schmall, a crane used in changing a light pole came into contact with uninsulated power lines. In both cases it was held that there were sufficient allegations of a duty. The power lines were in view, but the courts held that the power company could foresee the possibility of work being done near the lines.
One might find Genaust and Merlo inconsistent. Genaust appears to say the danger is apparent with the wires being in view and, thus, it is not foreseeable that people would come in contact with wires. Merlo appears to recognize that, in certain areas, activity near power lines is such that safety requirements such as adequate insulation are needed, irrespective of the obviousness of the danger. Regardless of the appearance, Genaust and Merlo have been found to be not inconsistent. In Watkins, the appellate court stated:
"It is our opinion that the circumstances in the present case imposed no duty upon defendant Utility to take precautions against an accident that was not reasonably foreseeable. In determining whether a duty exists, a court must apply a foreseeability test that brings within the scope of defendant's liability any injury which is objectively reasonable to occur, and not everything which might conceivably occur. (Genaust v. Illinois Power Co. (1976), 62 Ill.2d 456, 466, 343 N.E.2d 465, 471.) The injuries in the cases cited above, upon which plaintiffs rely, were objectively reasonable to occur, whereas the injury in the instant case falls within the `might conceivably occur' category. For example, it is objectively reasonable to foresee that a crane operated below live electrical wires wreaks havoc and cries out for utility company attention, as in Burke and Merlo, whereas the construction of storage tanks in the vicinity of live electrical wires portrays no such impending doom. That someone might work upon these storage tanks holding a 14-foot pole angled above and away such that the pole would contact the electrical wires is clearly in the `might conceivably occur' category rather *664 than the `objectively reasonable' category." Watkins, 165 Ill. App.3d at 499, 519 N.E.2d at 14.
In Schmall, a summary judgment in favor of the electric utility company was reversed where a crane used in the repair of a light pole came into contact with an uninsulated transmission line. The appellate court's decision stated:
"Due to the nature of the business, however, a utility company using highly charged wires owes a duty to see that such wires are properly placed and/or properly insulated where the conditions and circumstances reasonably indicate that persons might come in contact with or proximity to the wires. [Citations.]
Plaintiff here alleged a breach of the above duty due to Edison's constructive knowledge of the proximity of the light pole to the high voltage lines and the foreseeability that someone working on the light pole might come in contact with the lines." Schmall, 171 Ill. App.3d at 350, 525 N.E.2d at 262.
 3 We conclude the test whether the wires are properly located or insulated relates to whether the condition and circumstances reasonably indicate that people might come into contact with the transmission lines. Together with this test, we judge foreseeability by whether it was objectively reasonable to expect an injury to occur, not whether an injury might conceivably occur.
In the present case, Menard obtained a 30-foot right-of-way and placed the uninsulated transmission lines so that lines hung 13 feet above and nearly over the center of an existing feed bin. The bin, in place before the wires, was obviously a part of a farm feeding operation. Menard is one of many electrical cooperatives initially established in the 1930's to provide electricity to rural America. Historically, farm homes and farm operations have been the largest component of the makeup of cooperative customers. We conclude that cooperatives should be aware of the demands of, and methods used, in farm operations. To blindly allow the installation of transmission lines over a livestock feeding operation and free the cooperative from liability because of an obvious existence of the wires is contrary to the Merlo decision and is somewhat ludicrous. The present facts are different from Icenogle, wherein the lines were located over a public right-of-way and were not over the grain bin.
We are aware that the plaintiff in Carroll was injured when he came in contact with uninsulated transmission lines while installing lightning rods on the top of a farm shed. There, as here, the lines were crossing private property. Carroll followed Genaust. However, the type and use of the structure must be considered.
*665  4 We conclude that regardless of the 13-foot clearance over the feed bin, it was objectively reasonable to foresee that the farm operator and employees would be, for example, filling the bin with augers which, during the placement process, could reach 13 feet above the bin and, in cleaning the crusted feed from inside the 17-foot bin, would be using equipment sufficient in length to make contact with the power lines. The foreseeable danger calls out for protection of at least adequate insulation of the wires in the area of the bin. In so holding, we find the facts exceed the "might conceivably occur" test. While the lines are observable, it is foreseeable that someone who has a right to do so would be working on the bin and be in danger of making contact with the lines. In so holding, we necessarily conclude the Merlo case and its progeny are more appropriate to the facts in this case than the Genaust case and its progeny.
Both Merlo and Genaust preceded the adoption of comparative negligence. (See Alvis v. Ribar (1981), 85 Ill.2d 1, 421 N.E.2d 886.) Comparative negligence will be applicable in the trial of the present case.
Reversed and remanded.
KNECHT, P.J., and GREEN, J., concur.