WILMA JEAN DINKINS, Indiv. and as Adm'r of the Estate of Lee Roy Dinkins, Deceased, Plaintiff-Appellant, v. CARL EBBERSTEN, Defendant-Appellee (Central Illinois Light Company, Defendant).

Fourth District No. 4—91—0928

Opinion filed September 17, 1992.

COOK, J., dissenting.

Fredric Benson, of Feldman & Wasser, of Springfield, and Jay A. Heller, of Heller & Richmond, Ltd., of Chicago, for appellant.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Wilma Jean Dinkins, acting individually and as administrator of the estate of her late husband, Lee Roy Dinkins, sued Carl Ebbersten (defendant) and Central Illinois Light Company (CILCO) after plaintiff's husband was electrocuted while working on defendant's farm. Plaintiff's complaint consisted of seven counts, with the first four counts directed at defendant and the latter three at CILCO. CILCO's motion to dismiss counts V through VII was granted, and plaintiff is not appealing that ruling. The trial court granted defendant's motions for summary judgment on count I (based on the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 et seq.)), and counts II through IV (alleging negligence). Plaintiff appeals only from that part of the order granting summary judgment on the negligence counts against Ebbersten. We affirm.

I. FACTS

In July 1987, defendant hired plaintiff's husband, Lee Roy Dinkins, to paint a grain bin on defendant's farm. Defendant and Dinkins had met on several occasions prior to making this agreement, including at least one occasion when defendant witnessed Dinkins painting another grain bin on another farm. Defendant and Dinkins agreed that Dinkins would paint the grain bin, but did not set a time or date for performance. Sometime within the three weeks preceding the accident, Dinkins met with defendant on his farm to look over the job. According to defendant, nothing was discussed about the jobsite.

On August 11, 1987, Dinkins arrived on defendant's farm to paint his grain bin. Dinkins had not previously informed defendant that he would start the painting job that day. Dinkins was assisted by Terry Frazier. Although no one witnessed Dinkins' electrocution, neither party disputes that it occurred when a ladder he was carrying came into contact with some power lines near the grain bin.

John H. Swearingen, deputy coroner of Logan County, investigated the accident. Swearingen took photographs at the Ebbersten farm in an attempt to document the scene. Several overhead photographs were also taken by a CILCO employee. In addition, Swearingen took several measurements with a tape measure. (A sketch (not to scale) of the scene drawn by Swearingen, which shows the relationship of objects around the grain bin to one another, is attached as an appendix.)

Dinkins had parked his pickup truck in the machine shed driveway which ran to the east of the grain bin. Metal debris, a tire, a barrel, and various metal objects lay among some weeds to the north of the grain bin. Swearingen estimated the height of the weeds to be four to five feet. There was no path through the debris and weeds; however, there was a path north of the debris near the machine shed. To the immediate west of the metal grain bin was a grain auger, which also sat among tall weeds. To the south of the grain bin was Logan County Road 300. Piles of metal debris and rolled metal fencing lay among some weeds immediately adjacent to and south of the grain bin, in between the grain bin and the county road. Farther south of the debris was parked an operable bulldozer belonging to defendant. There was no walking path between the grain bin and the bulldozer. South of the bulldozer was open yard.

Swearingen estimated that the distance between the grain bin and the electrical wires was 15 to 20 feet. He further estimated that the distance between the bulldozer and the electric wires was 10 feet. Finally, he estimated that the distance between the grain bin and the north side of the bulldozer was approximately 8 to 10 feet.

Swearingen testified that while someone could have walked between the bulldozer and the bin, one would have to walk over the debris located there. Swearingen testified that the easiest path from the east side of the bin to the west side of the bin would have been to go south of the bulldozer. Swearingen also testified that the ground south of the bulldozer was "pretty level," although sloping very gradually downhill toward the road. The ground was "fairly smooth," not lumpy, and "appeared to have been mowed regularly." The day of the accident was sunny all day and not exceptionally windy.

Terry Frazier was working near the pickup truck mixing paint and making preparations at the time the accident happened. Frazier was not watching Dinkins at all times, but he believed that Dinkins had gotten off the ladder on the east side of the grain bin, picked the ladder up, and headed south. Frazier then heard Dinkins scream, so he looked up and saw a flash. Frazier saw Dinkins holding the ladder upright in the air. He then saw Dinkins and the ladder fall to the ground. Dinkins did not respond when Frazier went over to him.

A CILCO employee measured the distances between the wires and the ground. The top wire, energized with 7,200 volts of electricity, was 20 feet 6 inches above the ground. The bottom wire,

which was the ground or neutral wire, was 17 feet 4 inches above the ground. Dinkins had used a 20-foot 3-inch ladder. Swearingen found a burn mark 11½ inches from the top of the ladder, apparently the point of contact with the electrical wire. Therefore, Swearingen estimated that Dinkins had lifted the ladder approximately 14½ inches off the ground in order for it to make contact at that point with the line. Swearingen estimated the weight of the ladder to be 20 pounds.

In defendant's deposition, he stated that he was aware of the debris around the grain bin, and that either he or his son placed it there. They planned to use the metal as salvage material. Defendant also testified that he was aware of the power lines prior to the accident, but did not know whether they were insulated. Defendant did not mention the debris or the power lines to Dinkins before he started the job. Defendant assumed that Dinkins would use the same ladder to paint the grain bin on his farm that defendant saw Dinkins use to paint the grain bin on the other farm. However, defendant never saw Dinkins handle or move the ladder at the previous site. Defendant did not know Dinkins was on defendant's property until he arrived at the scene of the accident shortly after Dinkins had been electrocuted.

In July 1990, defendant filed a motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). The trial court heard arguments on that motion in October 1990 and denied it. In September 1991, defendant then filed a motion for summary judgment pursuant to section 2—1005 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005). On November 19, 1991, the court granted that motion and explained as follows regarding counts II through V:

> "All three Counts are premised upon identical theories of tort liability based on negligence. Illinois has adopted the *Restatement of Torts (Second)*, §343 and 343A. Again, considering everthing [*sic*] before the Court, the Court finds: (1) danger of electricity is common knowledge, as stated in *Genaust [v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465]; (2) it is also common knowledge that metal will conduct electricity; (3) 'a business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as (is) the possessor of land.' *Genaust.* (4) nothing was hidden; (5) Plaintiff['s decedent] could have removed any alleged debris to clear a path just as easily as Defendant. After all, Plaintiff['s

decedent] was in charge of the work; (6) Defendant was, according to his affidavit, never requested to clear the debris and Defendant didn't even know when the work was to commence; (7) Plaintiff is seeking to enforce a duty upon Defendant which is greater than called for by law; (8) in light of the peculiar circumstances presented here, the distraction theory is, in the Court's opinion, inapplicable and based, it would appear, to a large extent on conjecture and speculation. Everything considered, the Court determines that there is no genuine issue of material fact and Defendant is entitled to summary judgment as to Counts II, III and IV. So Ordered."

## II. ANALYSIS

### A. *Summary Judgment*

■ Summary judgment is properly granted when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223, 1224.) In reviewing an order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue of material fact exists. (*Gardner v. Navistar International Transportation Corp.* (1991), 213 Ill. App. 3d 242, 247, 571 N.E.2d 1107, 1110.) The party moving for summary judgment must show, as a matter of law, that it is entitled to judgment. (*Gardner*, 213 Ill. App. 3d at 250, 571 N.E.2d at 1112.) On review, this court reviews the granting of summary judgment *de novo. Shull v. Harristown Township* (1992), 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167.

### B. *Negligence*

■ To state an adequate cause of action for negligence, plaintiff must set out facts that establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) defendant breached that duty, and (3) that breach was the proximate cause of an injury. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96.) "While the questions of whether a duty has been breached and whether the breach proximately caused an injury are factual matters, the existence of a duty

must be determined by the courts as a matter of law." *Watkins v. Mt. Carmel Public Utility Co.* (1988), 165 Ill. App. 3d 493, 496, 519 N.E.2d 10, 12.

### 1. Duty

Duty is a question of law for the court to determine by asking whether plaintiff and defendant stood in a relationship to one another such that the law imposes upon the defendant an obligation of reasonable conduct for plaintiff's benefit. (*Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226; *Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 396.) Duty is determined, in part, by the reasonable foreseeability of injury. (*Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226.) "Other considerations include the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." *Ward*, 136 Ill. 2d at 140-41, 554 N.E.2d at 226-27.

In determining duty, we first address the relationship between Dinkins and defendant. Plaintiff argues that Dinkins was a business invitee of defendant. In *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 638-39, 381 N.E.2d 709, 713, the court wrote the following on when a person becomes a business invitee:

> "A person is a business invitee on the premises of another if (1) he enters by express or implied invitation, (2) his entry is connected with the possessor's business or with an activity the possessor conducts or permits to be conducted on his premises, and (3) there is a mutuality of benefit or an advantage to the possessor. [Citation.] Generally[,] an independent contractor and his employees who are doing work upon the premises in the interest of the possessor as well as their own, are business invitees of the possessor."

The facts in the present case clearly establish that Dinkins was defendant's business invitee. Once defendant contracted with Dinkins for painting the bin, defendant owed Dinkins a duty to warn him of any dangers known to or reasonably discoverable by defendant. However, "[a] business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472; see also *Watkins*, 165 Ill. App. 3d at 496, 519 N.E.2d at 12-13.

In *Genaust* (62 Ill. 2d at 468, 343 N.E.2d at 472), the Illinois Supreme Court adopted section 343 of the Restatement (Second) of

Torts, regarding the liability of possessors of land to invitees, which states as follows:

"§343. Dangerous Conditions Known to or
Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343, at 215-16 (1965).

See also W. Keeton, Prosser & Keeton on Torts §61, at 419 (5th ed. 1984) (discussing landowner liability).

In determining the scope of defendant's duty, the focus is on the defendant. (*Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.) "The scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof. The focus must be on defendant. A major concern is whether *defendant* could reasonably have foreseen injury to plaintiff." (Emphasis in original.) (*Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230, citing *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) However, "[t]he creation of a legal duty requires more than a mere possibility of occurrence." *Cunis*, 56 Ill. 2d at 376, 308 N.E.2d at 619.

Plaintiff argues that both the power lines and the debris presented foreseeable dangers on defendant's farm about which defendant owed a duty to warn plaintiff. In *Ward*, the court wrote the following:

"Under the common law, the landowner's or occupier's duty was to use reasonable care to *maintain his premises in a reasonably safe condition.* However, even under the common law, if he chose to maintain a dangerous condition on his premises, it was generally held that an adequate warning to invitees would suffice to render the condition 'reasonably safe.' He did not have to actually remove all dangers from his premises in order to avoid liability." (Emphasis in original.) *Ward*, 136 Ill. 2d at 141-42, 554 N.E.2d at 227.

However, power lines constitute obvious, not hidden dangers. In *Genaust*, plaintiff was injured when electricity arced from a power

line to the antenna he was installing. (*Genaust*, 62 Ill. 2d at 460-61, 343 N.E.2d at 468.) In affirming the judgment of the appellate court sustaining the dismissal of plaintiff's complaint, the supreme court concluded that a duty did not exist because "it is not objectively reasonable to expect that a person, knowing the danger of electricity if metal should contact electrical wires, would attempt to install a metal tower and antenna in such close proximity to electrical wires." (*Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471.) The court added the following:

> "[I]t is common knowledge that electricity is dangerous, so is it also common knowledge that any line or wire carrying electricity is dangerous. *** A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." *Genaust*, 62 Ill. 2d at 469, 343 N.E.2d at 472.

In *Watkins*, codefendant Hocking Oil Company hired plaintiff as an independent contractor to process crude oil stored in two large tanks operated by Hocking. The storage tanks were constructed near an uninsulated power line which had been erected approximately 40 years earlier by the defendant utility. A catwalk connected the two tanks and provided access to the tops of the tanks. Plaintiff received an electrical shock and fell from the catwalk when the aluminum gauging pole with which he was working came into contact with the power line owned by the utility. *Watkins*, 165 Ill. App. 3d at 495, 519 N.E.2d at 11-12.

The appellate court (with one dissent) concluded that Hocking had a duty to protect Watkins from the power lines, despite their obvious danger, because Hocking could anticipate the harm created by constructing the oil storage tanks too near the power lines. (*Watkins*, 165 Ill. App. 3d at 497, 519 N.E.2d at 13.) However, in considering the counts alleged against the utility company, the appellate court concluded that there was no duty owed to plaintiff by the utility. In so holding, the court wrote the following: "That someone might work upon these storage tanks holding a 14-foot pole angled above and away such that the pole would contact the electrical wires is clearly in the 'might conceivably occur' category rather than the 'objectively reasonable' category." *Watkins*, 165 Ill. App. 3d at 499, 519 N.E.2d at 14.

In *Icenogle v. Myers* (1988), 167 Ill. App. 3d 239, 521 N.E.2d 163, plaintiff was injured when the wand applicator he was using to paint a grain bin contacted a 7,200-volt power line. (*Icenogle*, 167

Ill. App. 3d at 240, 521 N.E.2d at 164.) The trial court granted the motions for summary judgment filed by the defendants, a utility (Illinois Power) and the landowner, Myers. (*Icenogle*, 167 Ill. App. 3d at 242, 521 N.E.2d at 165.) In affirming summary judgment for the landowner, this court determined that "there was no evidence indicating Myers was aware that painting on the structure would involve a long wand that might come in contact with the wire." *Icenogle*, 167 Ill. App. 3d at 244, 521 N.E.2d at 166.

In *In re Estate of Martin* (1990), 202 Ill. App. 3d 659, 559 N.E.2d 1125, plaintiff brought an action for wrongful death for a farm worker who was electrocuted when a 20-foot aluminum pole he was using to clean a feed bin came into contact with uninsulated power lines 13 feet above the bin. (*Martin*, 202 Ill. App. 3d at 660, 559 N.E.2d at 1126.) The worker was standing on top of the bin at the time, using the pole to scrape material from the inside of the bin. (*Martin*, 202 Ill. App. 3d at 662, 559 N.E.2d at 1127.) In reversing summary judgment in favor of the electrical cooperative, this court wrote the following:

> "We conclude the test whether the wires are properly located or insulated relates to whether the condition and circumstances reasonably indicate that people might come into contact with the transmission lines. Together with this test, we judge foreseeability by whether it was objectively reasonable to expect an injury to occur, not whether an injury might conceivably occur." (*Martin*, 202 Ill. App. 3d at 664, 559 N.E.2d at 1128.)

*Martin*, in contrast to *Watkins*, turned on the fact that the utility installed the lines *after* the bin was constructed. (See *Martin*, 202 Ill. App. 3d at 664, 559 N.E.2d at 1128.) However, this court did note that "the type and use of the structure [involved in the accident] must be considered." *Martin*, 202 Ill. App. 3d at 664, 559 N.E.2d at 1129.

■ Plaintiff has not alleged that the power lines or the debris presented a hidden danger. Although defendant knew of the presence of the power lines as well as the debris, neither presented an unreasonable risk of harm to Dinkins. (See Restatement (Second) of Torts §343(a) (1965).) Nor should defendant have expected that Dinkins would not discover or realize the power lines' obvious danger. (See Restatement (Second) of Torts §343(b) (1965).) Accordingly, defendant's failure to warn Dinkins of the power lines does not constitute a breach of defendant's duty to Dinkins.

## 2. Distraction Theory

■ Plaintiff next argues the "distraction theory" by claiming that the presence of the bulldozer and other debris created a distraction for Dinkins as he moved his ladder via the best available route to the west side of the grain bin. The distraction theory is an exception to section 343 and imposes a duty upon a landowner even for known or obvious dangers. The distraction theory is defined in the Restatement (Second) of Torts as follows:

"§343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Restatement (Second) of Torts §343A, at 218 (1965).)

Comments *e* and *f* to section 343A of the Restatement (Second) discuss the distraction theory further as follows:

"*e*. In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

\* \* \*

*f*. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. \* \* \*

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will

forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§466 and 496 D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." Restatement (Second) of Torts §343A, Comments *e, f*, at 219-20 (1965).

The distraction theory has been recognized and applied in several cases in this State. In *Ward*, the plaintiff was injured while carrying a large mirror out of defendant's store. Ward entered the building via a side door to the store's "Home Center" department. On both sides of the exit door, two concrete posts, painted dark brown, stood approximately five feet high, three feet apart, and 19 inches from the outside wall of the building. Upon exiting, plaintiff, distracted by the mirror he was carrying, ran into one of the concrete posts. *Ward*, 136 Ill. 2d at 136-38, 554 N.E.2d at 224-25.

The supreme court held that defendant could reasonably foresee that one of its customers would block his vision with an object he had purchased in the store and fail to see the concrete post. (*Ward*, 136 Ill. 2d at 157, 554 N.E.2d at 234.) This result was supported by evidence of the physical layout of the doorway, the type of door, the landscaping on the outside of the door, and testimony by one of the store's salesclerks. (See *Ward*, 136 Ill. 2d at 154, 554 N.E.2d at 233.) The court held in *Ward* that the record contained sufficient evidence to conclude that a mirror carried by a customer leaving that particular exit of the store constituted a foreseeable distraction.

In *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 594 N.E.2d 313, plaintiff's decedent was electrocuted when he came into contact with electrical lines next to a billboard. The billboard ran in a north and south direction, with power lines at the north end of the billboard suspended eight inches in from the end of the billboard and approximately 24 to 30 inches above the billboard. Two feet from the top, a catwalk ran along the back of the billboard. The catwalk consisted of "two-by-six boards nailed to the structure." (*American National*, 149 Ill. 2d at 17-18, 594 N.E.2d at 314.) Evidence before the trial court indicated that shortly before the

accident, the victim was distracted by the necessity of care for his footing on the rotten boards of the catwalk; as a result, he did not notice the power line near his head. (See *American National Bank & Trust Co. v. National Advertising Co.* (1990), 205 Ill. App. 3d 348, 350, 562 N.E.2d 1057, 1058; see also *American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.) The trial court granted summary judgment for the defendant, the appellate court reversed, and the supreme court affirmed, finding that defendant had reason to anticipate "that a worker might be distracted by having to watch where to place his feet, and consequently would not be aware of or remember the presence of the electric wires." (*American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.) The court held that American National owed a duty of reasonable care to the decedent because of this distraction. *American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.

In *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239, a case on which plaintiff relies heavily, Deibert was injured as he exited a portable lavatory at a construction site. Upon exiting the lavatory, plaintiff stepped down onto the ground and looked up to ascertain whether construction materials were being thrown off a balcony above and near the lavatory. As plaintiff was looking up, he took two steps from the lavatory before he stepped into one of several tire ruts in the ground. Plaintiff stumbled in a rut and injured his back. *Deibert*, 141 Ill. 2d at 433, 566 N.E.2d at 240.

The supreme court held that defendant owed plaintiff a duty of care, agreeing with plaintiff's contention that he became distracted upon exiting the lavatory and that defendant, as general contractor at this project, was aware that workers had been throwing materials off a balcony on one or two buildings under construction at that site. The court acknowledged that the rut—the condition of the land which caused plaintiff's injury—was obvious. (*Deibert*, 141 Ill. 2d at 438, 566 N.E.2d at 243.) However, the court ruled that it was reasonable to expect that defendant, as a general contractor, was aware that workers had been throwing materials off a balcony and that ruts were present on this particular construction site. (*Deibert*, 141 Ill. 2d at 438-39, 566 N.E.2d at 243.) The court concluded that the distraction and resulting injury suffered by plaintiff was reasonably foreseeable. *Deibert*, 141 Ill. 2d at 440, 566 N.E.2d at 244.

Finally, in *Crider v. Crider* (1992), 225 Ill. App. 3d 954, 588 N.E.2d 439, plaintiff was injured while helping his father trim a tree. The trial court granted defendant's motion for summary judgment, finding that plaintiffs had failed to establish the existence of a duty. (*Crider*, 225 Ill. App. 3d at 955, 588 N.E.2d at 441.) On appeal, plain-

tiff asserted the distraction theory as an exception to the duty for known or obvious dangers. The appellate court affirmed, noting that unlike *Deibert* and *Ward* (and *American National*), there were no allegations or evidence that plaintiff was distracted or that he momentarily forgot the danger involved. *Crider*, 225 Ill. App. 3d at 958, 588 N.E.2d at 442.

Although a plaintiff responding to a motion for summary judgment need not prove her case at that preliminary stage, she must, nevertheless, present some evidentiary facts to support the elements of her claim. (*Gardner*, 213 Ill. App. 3d at 250, 571 N.E.2d at 1112.) If evidentiary facts, provided through affidavits and the record, do not support plaintiff's claims raised by the pleadings, defendant is entitled to summary judgment. *Alexander v. Standard Oil Co.* (1981), 97 Ill. App. 3d 809, 814, 423 N.E.2d 578, 582.

■ In support of her distraction theory, plaintiff suggests four possible distractions: (1) the sun, (2) the wind, (3) the power lines, and (4) the debris and bulldozer south of the bin. Of these, defendant could conceivably be held accountable only for the debris and the bulldozer. As in *American National, Deibert,* and *Ward*, the dispositive question in applying the distraction theory was whether defendant had reason to expect that even if Dinkins knew of the danger, he would likely be distracted during the work and encounter the danger due to that distraction. See *American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320; *Deibert*, 141 Ill. 2d at 439-40, 566 N.E.2d at 243-44; *Ward*, 136 Ill. 2d at 152-54, 554 N.E.2d at 232-33; see also *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, 782, 489 N.E.2d 35, 37.

After reviewing the record in this case, we conclude that plaintiff presented no evidence to support her distraction theory. Both defendant and Swearingen testified that the land surface south of the bulldozer was flat and without lumps or depressions. While the ground did slope downhill a little from the bulldozer to the road, Swearingen testified (and the photographs also show) that the area was well mowed and clear of any impediments. Nothing in the record supports plaintiff's claim that Dinkins was somehow distracted while proceeding south of the bulldozer. Nor would defendant have had any reason to expect that Dinkins would be distracted. Once Dinkins decided to walk around (and not through) the debris and chose as his course the smooth, relatively flat, undistracting ground south of the bulldozer, the debris and bulldozer he chose to walk around did not constitute any distraction. The mere fact that he needed to go around the bulldozer and debris does not constitute a distraction because those items could not have distracted him while he moved around them. Unlike

the cases cited and discussed above, there was nothing in Dinkins' path that defendant could have anticipated as being a distraction. Compare *American National*, 205 Ill. App. 3d at 348, 562 N.E.2d at 1058 (narrow, rotting catwalk); *Deibert*, 141 Ill. 2d at 439, 566 N.E.2d at 243 (falling debris); *Ward*, 136 Ill. 2d at 153-54, 554 N.E.2d at 223 (merchandise carried by a customer).

Citing *Pace v. McClow* (1983), 119 Ill. App. 3d 419, 458 N.E.2d 4, plaintiff argues that circumstantial evidence is sufficient to establish the elements of her negligence claim. However, that case still requires plaintiff to provide *some* facts which would support the inference she asks us to draw.

> "Circumstantial evidence is the *proof of certain facts and circumstances* from which the jury may infer *other connected facts* which usually and reasonably follow according to the common experience of mankind." (Emphasis added.) (*Pace*, 119 Ill. App. 3d at 423-24, 458 N.E.2d at 8.)

In *Pace*, a case involving an automobile accident, plaintiff presented circumstantial evidence that proved slick pavement and an absence of skid marks at the scene of the accident. These *facts* supported a reasonable inference that the defendant was driving negligently. (See *Pace*, 119 Ill. App. 3d at 426, 458 N.E.2d at 10.) In the case at bar, plaintiff has presented no facts that would support an inference that Dinkins was distracted by anything within defendant's control, nor that defendant could foresee such a distraction. We emphasize again that foreseeability is that which is objectively reasonable to expect, not merely what might conceivably occur. (See *American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.) Without facts to support her claim, plaintiff cannot defeat defendant's motion for summary judgment. "No presumption of negligence arises from the mere happening of an accident." *Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 338, 504 N.E.2d 243, 246.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's granting of summary judgment in favor of defendant.

Affirmed.

KNECHT, J., concurs.

APPENDIX

Logan Co. Coroner's Office
investigation into death of
Mr. Lee Roy Dinkins 8-11-1987

Drawing by John H. Swearingen
August 13, 1987

Sketch of Scene of injury.

(NOT TO SCALE)

Section 34
Elkhart Township
Logan County, Illinois

JUSTICE COOK, dissenting:

I would reverse the trial court's order granting defendant summary judgment on counts II through IV of plaintiff's complaint, and remand for further proceedings.

It was once held that the duty of reasonable care owed by an owner or occupier of land to those lawfully on his premises did not under any circumstances extend to known or obvious conditions. That rule is no longer the law in Illinois. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 145, 554 N.E.2d 223, 229.) A possessor of land can be liable, even for physical harm caused by a known or obvious condition, if he should have anticipated the harm despite such knowledge or obviousness. (Restatement (Second) of Torts §343A (1965); see *Ward*, 136 Ill. 2d at 149, 554 N.E.2d at 231.) The effect of *Ward* is to allow a jury to decide many cases which previously would have been resolved against plaintiff by the court. "Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact." (*Ward*, 136 Ill. 2d at 156, 554 N.E.2d at 234.) "The obviousness of the danger and plaintiff's own negligence affect whether and to what extent plaintiff is comparatively negligent, not the duty of the possessor of land." *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 442, 566 N.E.2d 239, 245; see Restatement (Second) of Torts §343A, Comment *f*, at 220 (1965).

## I. EXISTENCE OF A DUTY

" 'A duty limitation is proper for those dangers which are always outside the defendant's scope of duty, but obvious dangers are not always found there.' " (*Ward*, 136 Ill. 2d at 146, 554 N.E.2d at 294, quoting Note, *Torts—Assumption of Risk and the Obvious Danger Rule. Primary or Secondary Assumption of Risk?*, 18 Land & Water L. Rev. 373, 384 (1983).) *Ward* was recently applied in an electrocution case, *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 26, 594 N.E.2d 313, 318. In *American National* defendant was the lessee of a billboard and had contracted with decedent's employer to have the billboard painted. The billboard had a walkrail along its back, consisting of 2 by 6 boards located about two feet from its top. A high-voltage line crossed the billboard at right angles, about eight inches from one end, 24 to 30 inches above the top of the sign. *American National* first considered whether the power line was open and obvious, to deter-

mine whether defendant could fit within section 343A of the Restatement. Because some workers had testified they were unaware of the power line's presence, *American National* held there was a question of fact whether the danger was open and obvious. (*American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.) Despite that question of fact the supreme court went on to consider whether other grounds would defeat the summary judgment entered in favor of defendants.

First, however, *American National* considered whether *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, announced a rule that a landowner could never have a duty to warn of a power line, concluding that it did not. *American National* distinguished *Genaust* on the basis the landlord there

> "could not have discovered the danger of electricity arcing from power lines '*which were neither on its property nor under its control*.' (Emphasis in original.) (*Genaust*, 62 Ill. 2d at 468.) Further, the court found that an employer would expect a worker with expertise in installing antennae to be reasonably aware of the hazards of installing metal equipment near power lines." (*American National*, 149 Ill. 2d at 28, 594 N.E.2d at 319.)

(*Cf. Carroll v. Commonwealth Edison Co.* (1986), 147 Ill. App. 3d 909, 498 N.E.2d 645 (rejecting plaintiff's attempts to distinguish his case from *Genaust*, finding plaintiff's degree of experience or expertise as an electrician not determinative, and finding of no significance that the power lines were located on Babson Farms, whereas in *Genaust* the power lines were beyond the landowner's control because they were not on the landowner's property).) In the present case it would appear defendant could easily have discovered the danger of these power lines, even if they were slightly off his property. Nor has it been established that defendant believed decedent to be anything more than a self-taught painter with no formal training in or knowledge of electricity. To paraphrase *Ward*, to the extent *Genaust* was previously thought to state an absolute rule that a landowner did not under any circumstances have a duty to warn of a power line, that rule is not the law in Illinois. *Ward*, 136 Ill. 2d at 145, 554 N.E.2d at 229; *Deibert*, 141 Ill. 2d at 442, 566 N.E.2d at 245.

In determining whether there was a duty, *American National* considered whether it was foreseeable that a worker would come into contact with the power line, whether it was foreseeable the worker would be distracted, and how heavy the burden would be on defendant to protect workers against the power line. (*American National*, 149 Ill. 2d at 29, 594 N.E.2d at 320.) In *American National* it was

found objectively reasonable to expect that a worker could come into contact with a power line that hung only 4½ to 5 feet above the walkrail. Similarly, in the present case it is foreseeable that persons using equipment more than 20 feet in height in a farm lot will encounter a power line located 20 feet 6 inches above the ground at the edge of the property. In *American National* it was held reasonable to expect that a worker might be distracted by having to watch where to place his feet while walking on the walkrail. Similarly in this case it is reasonable to expect the decedent would be distracted walking through weeds, near if not through debris, while carrying a 20-foot ladder upright.

The grass and weeds where the ladder fell are shorter than other grass in the area, but still tall enough to conceal holes, ruts, or small items of debris. The majority opinion states that according to the testimony of John H. Swearingen, the deputy coroner of Logan County, and to the photographs, the area south of the bulldozer "was well mowed and clear of any impediments." (234 Ill. App. 3d at 991.) Swearingen actually said the area was "covered with vegetation, grass, weeds and so forth and appeared to have been mowed regularly. So I would say that vegetation was approximately six inches tall." Although the area may have been mowed regularly, it does not appear to have been mowed recently. The photographs (particularly Nos. 23 and 24) show the ladder lying in grass and weeds about six to eight inches tall, south of the bulldozer. Some of the grass and weeds had gone to seed. The ground at that point appears somewhat uneven. Swearingen testified there was a shallow, vegetation-covered ditch alongside the roadway. The power lines were along the northern edge of the ditch, where the midpoint of the ladder landed when it fell. The grass at the southeast corner of the bulldozer and along its east side, where decedent was apparently headed with the ladder, appears to be about five feet tall. In *Deibert*, the plaintiff, who was not carrying anything, "could not look both places: up, to check for the possibility of flying construction materials; and down, to protect himself from tripping in a rut." (*Deibert*, 141 Ill. 2d at 439, 566 N.E.2d at 243.) Decedent's task in this case was certainly no easier.

There is no policy reason why a landowner should not be held liable for accidents caused by power lines on his property, although there are policy reasons why utility companies should not be liable. (See, *e.g., Watkins v. Mt. Carmel Public Utility Co.* (1988), 165 Ill. App. 3d 493, 499, 519 N.E.2d 10, 14 (economic realities make it unrealistic that utility companies post warning signs or insulate their power lines, which may amount to thousands of miles).) *American Na-*

*tional* held that the landowner's burden of protecting workers against the power line would not have been heavy—defendant might have shortened the walkrail, or demanded the utility relocate the line, or at least warned workers of the hazard. The magnitude of the burden of guarding against the injury in the present case also does not appear great—the debris could have been moved, the landowner could have demanded that the utility temporarily relocate the power line, or at least the landowner could have warned decedent of the hazard. The defendant landowner in this case owed a duty of reasonable care to the invitee.

## II. Breach Of Duty, Proximate Cause

The trial court based its summary judgment on its finding that there was no duty. The majority opinion also adopts a fall-back position, that even if there were issues of fact plaintiff did not sustain her burden of responding to defendant's motion for summary judgment. Whether a defendant has breached its duty of care is generally a question of fact for the jury, as is the question whether the breach was the proximate cause of the injury. (*Deibert*, 141 Ill. 2d at 438-39, 566 N.E.2d at 243.) Proximate cause only becomes a question of law when the facts are not only undisputed but are such that there can be no difference in the judgment of reasonable persons as to the inferences to be drawn from them. (*Durbin v. St. Louis Slag Products Co.* (1990), 206 Ill. App. 3d 340, 357, 564 N.E.2d 242, 253.) If what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered. (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.) The evidence in this case does not so overwhelmingly favor the movant that a contrary verdict could never stand. Summary judgment should have been denied on counts II through IV.

The trial court quoted *Genaust* for the proposition that an invitee must be held to be as equally aware of all obvious and normal hazards as is the possessor of the land. It must be remembered, however, that defendant had been on this lot many more times than decedent, having erected the grain bin in 1972. It is likely that defendant on occasion had maneuvered farm equipment between the grain bin and the power lines. The trial court also noted that decedent could have removed any alleged debris to clear a path just as easily as defendant. Perhaps a jury would so conclude, but I see no justification for a court

making that decision in this case. There is no indication decedent could have moved the bulldozer, which was operable. Defendant apparently had equipment available for mowing grass and weeds, but there is no showing that decedent had any such equipment. If decedent had moved debris he would have to have asked defendant for permission, and where the debris should be moved. Decedent had room to lower his ladder from an upright to a horizontal position before he walked around the bin, but it is not clear that a reasonable person, engaged in painting a grain bin, would have done that. In *Deibert* plaintiff could easily have avoided the accident by stopping before he looked up for falling debris. That, however, was something for the jury to consider, not the court. (*Deibert*, 141 Ill. 2d at 442, 566 N.E.2d at 245.) In *American National* the court held there were jury questions whether the power lines were open and obvious, whether defendant took any safety precautions, and whether those precautions were adequate to satisfy its duty of reasonable care. The jury was also to consider, on the issue of plaintiff's negligence, whether the *American National* decedent's experience as a sign painter, and his use of ordinary care, would have caused him to avoid the accident. The jury should decide those issues in this case as well.

I respectfully dissent.